98 F.3d 1348
 78 A.F.T.R.2d 96-6993, 96-2 USTC P 50,579
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Stanley E. YOUNGS, Jr.; Linda G. Youngs, Petitioners-Appellants,
v.
COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.
 No. 95-70503.
 United States Court of Appeals, Ninth Circuit.
 Submitted Oct. 8, 1996.*
Decided Oct. 10, 1996.
 
 1
 Before: BROWNING, D.W. NELSON, and FERNANDEZ, Circuit Judges
 
 
 2
 MEMORANDUM**
 
 
 3
 The tax court did not clearly err in holding that Stanley E. Youngs was an independent contractor in 1986, 1987, and 1988.[1]
 
 
 4
 Youngs is an employee for federal employment tax purposes "if under the usual common law rules the relationship between him and ... [National] is the legal relationship of employer and employee." Treas.Reg. § 31.3121(d)-1(c)(1) (1980). At common law, courts determine an individual's employment status by using a flexible test. Because "no shorthand formula or magic phrase ... can be applied to [determine the status of a work relationship], ... all of the incidents of the relationship must be assessed and weighed with no one factor being decisive." NLRB v. United Ins. Co., 390 U.S. 254, 258 (1968).
 
 
 5
 A purported employer's right to control the worker is the most important basis for distinguishing employees from independent contractors. Chin, 57 F.3d at 725. An employer has the right to control both the result an employee must accomplish and the means by which he must accomplish the result. In contrast, a company which hires an independent contractor merely has the right to specify the result it desires. See Treas.Reg. § 31.3121(d)-1(c)(2) (1980).
 
 
 6
 We reject Youngs' argument that the tax court erred because it examined whether National Maintenance Contractors, Inc. ("National") actually controlled the manner in which Youngs performed his work rather than whether it had the right to do so. The tax court recognized and applied the proper standard. ER 123 (quoting Treas.Reg. § 31.3121(d)-1(c)(2), which sets forth this standard).
 
 
 7
 Youngs' only evidence that National might have had the right to control more of the details of his work than it actually did was Youngs' own ambiguous testimony. Youngs testified, "[Lyle Graddon] did not have much ability to supervise. [But] he certainly could. If he said, 'I don't want you to make checks out that way' or 'I don't want you to enter journal entries that way,' I suppose I'd have to respond to it." ER 103. This testimony could mean either that Youngs believed Graddon could control the result Youngs had to achieve or that Graddon could specify the manner in which he achieved that result. Youngs' 1990 letter to the IRS stating that National was concerned with the results of his work, not the manner in which he performed it, strongly suggests Youngs' testimony meant that Graddon had the right to control only the results of his work. ER 117.
 
 
 8
 Nor did the court clearly err in determining that National did not in fact control the manner in which Youngs completed the tasks assigned to him. The tax court acknowledged that National exercised some control over Youngs' work. Graddon required Youngs to meet with him on a weekly basis to report on the status of particular projects and prioritized tasks assigned to Youngs. National also paid Youngs' business and travel expenses. The tax court also recognized less actual control was necessary to establish a professional person is an employee. ER 123. Nonetheless the tax court concluded National did not exercise sufficient control over the way in which Youngs performed his work to classify him as an employee.[2]
 
 
 9
 The record supports this conclusion. National did not require Youngs to work during certain hours or to work at its offices. In the 1990 letter to the IRS, Youngs stated that National was concerned with the results of his work, not the manner in which he accomplished them. Furthermore, Youngs' work was not an integral part of National's business; franchising janitorial services, not accounting, is National's business. Outside individuals or firms could supply necessary accounting services.
 
 
 10
 The tax court did not err in finding that, on balance, other aspects of National and Youngs' work relationship weighed against finding Youngs was an employee. The fact that National had the right to terminate Youngs at any time tended to show he was an employee, but other factors weighed against this conclusion. Youngs concedes that both he and National believed he was an independent contractor during the years in question. National did not offer him permanent employment until 1989.[3] In addition, National paid for Youngs' services on a job by job basis, and did not give him employee benefits other than business and travel expenses. Youngs paid for the materials he used when he worked at home. He performed accounting services for approximately twenty-five other clients in 1986, 1987, and 1988.
 
 
 11
 We affirm the tax court's decision that Youngs was an independent contractor during 1986, 1987, and 1988. The court examined all the relevant incidents of Youngs and National's relationship and did not err in determining they demonstrated Youngs was an independent contractor.
 
 
 12
 AFFIRMED.
 
 
 
 *
 The panel finds this case appropriate for submission without oral argument pursuant to 9th Cir.R. 34-4 and Fed.R.App.P. 34(a)
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 The determination of a taxpayer's status as an independent contractor or an employee is a mixed question of law and fact. Because questions of fact predominate, we review for clear error. Chin v. United States, 57 F.3d 722, 725 (1995)
 
 
 [2]
 Contrary to Youngs' contentions, the tax court examined the factors Youngs claims it overlooked. The court considered his integration into National's operating structure, found that he worked on a job by job basis, determined that National did not reserve much authority to control the manner in which he performed his work, and noted that National did not give him employee benefits
 
 
 [3]
 Although Youngs worked continuously for National between 1986 and 1988 and performed a regular set of tasks, the tax court did not err in finding that National and Youngs did not have a permanent relationship until 1989. Youngs testified that his relationship with National was not well-defined: "As things changed at National ..., the discussion was, 'What's going to happen? Should I continue to pursue job opportunities if they come to me, or should I not worry about that?' " ER 80. He also said he worked on a job by job basis. ER 117